In re RED DOT SCENIC, INC., Debtor.

No. 98–41216(RDD).

United States Bankruptcy Court,
S.D. New York.

Aug. 16, 2004.

See also 293 B.R. 116, 351 F.3d 57.

Law Offices of Angela Tese–Milner, by Angela Tese–Milner, for the Chapter 7 Trustee.

Law Office of Anne–Miriam V. Hart, by Anne–Miriam V. Hart, for Thomas J. Carroll.

## MEMORANDUM DECISION AND ORDER ON TRUSTEE'S OBJECTION TO CLAIM OF THOMAS J. CARROLL

ROBERT D. DRAIN, Bankruptcy Judge.

The chapter 7 trustee (the "Trustee") objected on April 25, 2002 to a $24,000 secured claim filed by Thomas J. Carroll ("Carroll"), a former shareholder of the above-captioned debtor ("Red Dot" or the "Debtor"). The Trustee has asserted three grounds for her objection: that the claim was not secured,[1] that the claim is not enforceable as based on a fraudulent transfer, and that the claim must be disallowed under section 502(d) of the Bankruptcy Code because Carroll has been found liable under section 548(a)(1) of the Bankruptcy Code as the transferee of an $18,000 fraudulent transfer that he has not disgorged to the Trustee.[2]

After Carroll responded in opposition to the claim objection and the Trustee replied and Carroll filed a sur-response, the objection remained unresolved while Carroll pursued his appeal of Bankruptcy Judge Bohanon's unpublished decision, dated November 6, 2000 (the "Bankruptcy Court Decision"), granting the Trustee summary judgment in the $18,000 fraudulent transfer adversary proceeding.[3] The District Court affirmed the Bankruptcy Court Decision, *Tese–Milner v. Brune (In re Red Dot Scenic, Inc.)*, 293 B.R. 116 (S.D.N.Y. 2003), and the Second Circuit affirmed the District Court, *Carroll v. Tese–Milner (In re Red Dot Scenic, Inc.)*, 351 F.3d 57 (2d Cir.2003), after which the Trustee renewed her claim objection by a Post–Hearing Submission of Recent Second Circuit Decision in Further Support of an Order Granting Objection and Expunging Claim.

Having considered the foregoing pleadings, Carroll's subsequent response, the pleadings in the fraudulent transfer adversary proceeding, and the Bankruptcy Court Decision and the opinions of the District Court and the Second Circuit that affirmed it, the Court grants the Trustee's claim objection on three separate grounds. Carroll's claim is disallowed under section 502(d) of the Bankruptcy Code unless Carroll has paid over the full amount of the judgment in the fraudulent transfer pro-

---

1. Carroll has conceded this point.

2. Section 502(d) provides, in relevant part
   Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section ... 550 ... of this title or that is a transferee of a transfer avoidable under section ... 548 ... of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section ... 550 of this title.

11 U.S.C. § 502(d).

3. In his response to the Trustee's claim objection, Carroll argued to Judge Bohanon, among other things, that it was premature to disallow his claim under section 502(d) when his appeal of the fraudulent transfer judgment was pending. Judge Bohanon did not rule on the claim objection or, specifically, on Carroll's argument that the Trustee's objection under section 502(d) of the Bankruptcy Code was premature.

ceeding, plus interest, which apparently he has not done. Alternatively, if Carroll has timely satisfied this condition, his claim nevertheless is disallowed on the basis of collateral estoppel, or issue preclusion, as well as *res judicata,* or claim preclusion.

## Background

Carroll's $24,000 claim is based on the same transaction under which he received the $18,000 fraudulent transfer avoided in the adversary proceeding. As described in Chief District Judge Mukasey's opinion in the adversary proceeding, on December 10, 1996 Carroll and David Brune, the other Red Dot shareholder, entered into a contract pursuant to which Brune agreed to pay Carroll $57,000, in the form of a $15,000 down payment with the balance in seven installments, for Carroll's shares. *In re Red Dot Scenic,* 293 B.R. at 117. "Brune tendered four additional checks to Carroll totaling $18,000. However, unlike the first check, which was drawn from Brune's personal account, these checks were issued from Red Dot's corporate checking account. Red Dot received no consideration for these four payments." *Id.* Red Dot filed a chapter 11 petition within one year of each of the payments, and the case was later converted to a case under chapter 7.

The District Court stated that Red Dot received no consideration for the $18,000 paid to Carroll, notwithstanding the fact that under paragraph 7 of the December 10, 1996 contract pursuant to which Brune bought Carroll's shares, Red Dot had previously agreed, along with Brune, to execute a series of seven promissory notes (the "Notes") for the purchase price installments, including the $18,000 that Red Dot paid.

Carroll's response to the Trustee's claim objection attaches four of the Notes, each of which is dated December 10, 1996, pursuant to which Red Dot agreed to pay Carroll $24,000 that he never received because of Red Dot's intervening bankruptcy. Carroll's claim is for this unpaid $24,000 under the Notes and paragraph 7 of the December 10, 1996 purchase agreement.

All three decisions in the Trustee's adversary proceeding to avoid and recover the $18,000 paid to Carroll by the Debtor state that the parties did not dispute that all of the elements of a fraudulent transfer under section 548 of the Bankruptcy Code had been established. *In re Red Dot Scenic,* 351 F.3d at 58 ("Neither party contests that the requirements of section 548 were met."); *In re Red Dot Scenic,* 293 B.R. at 118 ("It is undisputed that there was a transfer of the debtor's property, that Red Dot did not receive reasonably equivalent value for the transfers, and that Red Dot was insolvent at the time of the transfers to Carroll based on the definition of 'insolvent' in section 101(32) of the Code. Thus, the elements of section 548 have been met, and the trustee is authorized to exercise her avoidance power."); Bankruptcy Court Decision at 4–5 ("Carroll does not dispute that the four payments drawn from Red Dot's assets within one year of its bankruptcy filing while Red Dot was insolvent constitute a voidable transaction under § 548(a)(1)(B) of the Code.").

In the adversary proceeding, having conceded the avoidability of the payments, Carroll contested whether they were recoverable from him under section 550(a) of the Bankruptcy Code.[4] (The Trustee ar-

---

4. Section 550(a)(1) of the Bankruptcy Code states in relevant part:

[T]o the extent that a transfer is avoided under section ... 548 ... of this title, the

trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

gued that Carroll was the initial transferee of the payments and thus strictly liable to return them; Carroll argued that he was only the immediate or mediate transferee and contended that he could assert a good faith defense to turnover under section 550(b) of the Bankruptcy Code.[5]) The Trustee prevailed on summary judgment, giving rise to Carroll's obligation to pay over to the estate $18,000 plus interest without the need for further proceedings to determine whether he was a good faith transferee. *In re Red Dot Scenic,* 351 F.3d at 58.

Notwithstanding this result, Carroll has continued to pursue his claim, which, as noted, is based on the same Notes and purchase agreement pursuant to which Red Dot paid the $18,000, because the Trustee sought to avoid only the $18,000 of payments and not also the underlying obligations. The time to bring such an adversary proceeding—or, more properly, one under section 544 of the Bankruptcy Code, which, unlike section 548, would permit the Trustee to reach back to December 10, 1996, the date Red Dot entered into the Notes and the purchase agreement—has expired. *See* 11 U.S.C. § 546(a)(1). Carroll therefore argues that his $24,000 claim must be allowed. (Carroll's most recent response also implies, although it does not expressly state, that Carroll will satisfy the amount he owes in the adversary proceeding if and when he needs to, having obtained an appeal bond that will cover most, but not all, of the judgment and,

apparently, having the means to satisfy the remaining amount of accrued interest.)

The Trustee contends, on the other hand, that Carroll's claim must be disallowed not only under section 502(d) of the Bankruptcy Code but also under the doctrines of collateral estoppel, *res judicata* and judicial estoppel, whether or not she is time-barred to avoid the Notes and the purchase agreement as fraudulent transfers.

## Discussion

**A. Applicability of Section 502(d) of the Bankruptcy Code.** It is clear that Carroll's failure to pay the Trustee the amount of the judgment in the adversary proceeding, plus post-judgment interest, requires the disallowance of his claim under section 502(d) of the Bankruptcy Code. *See generally* 4 *Collier on Bankruptcy* ¶ 502.05[1] (15th ed.2004) at 502–56–7. Carroll's only argument on this point, as it was while his appeal in the adversary proceeding was pending, is one of timing. He contends that it is "premature" to disallow his claim under section 502(d) until the Trustee has unsuccessfully tried to enforce the judgment against him. He is incorrect. The plain language of section 502(d) does not condition disallowance on the transferee's failure to satisfy a judgment; instead, it states that "the court shall disallow any claim of any entity from which property *is recoverable* ... under section 550...." 11 U.S.C. § 502(d) (emphasis added).

---

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a)(1).

**5.** Section 550(b) of the Bankruptcy Code states in relevant part:

The trustee may not recover under subsection (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

■ As noted by *Collier*, section 502(d) of the Bankruptcy Code does not even necessarily require the entry of a judgment, let alone the failure to enforce one, for a claim to be disallowed: "To assure the effectuation of the purpose of this section, a claim may be disallowed at least temporarily and for certain purposes, subject to reconsideration, simply upon the allegation of an avoidable transfer. But to prevent abuse of this section this initial disallowance should be made by judicial determination, whether it be obtained in a claim objection or by some form of declaratory judgment action." 4 *Collier on Bankruptcy* ¶ 502.05[2][a] at 502–59 (citing *Seta Corp. v. Atlantic Computer Sys. (In re Atlantic Computer Sys.)*, 173 B.R. 858, 862 (S.D.N.Y.1994), for the proposition that section 502(d) envisions only some form of judicial determination of the underlying avoidance action before claim disallowance); *see also In re Metiom, Inc.*, 301 B.R. 634, 642 (Bankr.S.D.N.Y.2003). Thus, if the funds at issue in the adversary proceeding, including post-judgment interest, remain unrecovered, Carroll's claim is disallowed, subject to Carroll's right to request reconsideration for cause under section 502(j) of the Bankruptcy Code.[6]

■ **B. Collateral Estoppel.** The Trustee needs to satisfy four elements to establish collateral estoppel, or issue preclusion: (1) the issue must have been the same as that involved in the prior action; (2) the issue sought to be precluded must have been actually litigated in the prior action, with Carroll having had a fair opportunity to do so; (3) the issue must have been determined by a final judgment; and (4) the issue must have been essential to the prior judgment. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *see also Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 42 (2d Cir. 1986); *Klein, Maus & Shire, Inc.*, 301 B.R. 408, 415 (Bankr.S.D.N.Y.2003).[7]

■ The issue of the validity and enforceability of Carroll's claim was (1) involved in the adversary proceeding, (2) determined by the final judgment in that proceeding, and (3) essential to that prior judgment. The adversary proceeding determined that the payment of $18,000 to Carroll was a constructively fraudulent transfer under section 548(a)(1)(B) of the Bankruptcy Code. In doing so, the Court had to determine that the basis for Carroll's $24,000 claim—the Notes and paragraph 7 of the purchase agreement, did not support the $18,000 of payments that also were based on the Notes and paragraph 7 of the purchase agreement. This is so because a necessary element of a cause of action under section 548(a)(1)(B) is the debtor's receipt of "less than a reasonably equivalent value in exchange for such transfer." 11 U.S.C. § 548(a)(1)(B)(i). For purposes of section 548 of the Bankruptcy Code, "value" means, among other things, "satisfaction or securing of a present or antecedent debtor of the debtor." 11 U.S.C.

---

6. The "for cause" standard of 11 U.S.C. § 502(j) should not be taken lightly in this context. There may well not be "cause" for reconsideration of disallowance if the claimant has, for example, delayed the administration of a cash-strapped estate by forcing the trustee to litigate over section 502(d) after the issuance of a judgment without having sought any injunctive relief or other consensual resolution with regard to its pending payment obligation.

7. Because collateral estoppel has been invoked in respect of an issue decided within this Court's core jurisdiction (*see* 28 U.S.C. § 157(b)(2)(B) and (H)), federal collateral estoppel rules apply. *Blonder–Tongue Laboratories v. Univ. of Illinois Foundation*, 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Gelb v. Royal Globe Ins.*, 798 F.2d at 42.

§ 548(d)(2)(A). Therefore, if the Notes and Red Dot's obligation under paragraph 7 of the purchase agreement (the basis for both the $18,000 of avoided payments and Carroll's $24,000 claim) were valid and enforceable, Red Dot's payments to Carroll would have been supported by reasonably equivalent value and the payments would not have been avoided under section 548(a)(1)(B).

For purposes of collateral estoppel, a court may infer that an issue was actually determined "when the issue for which preclusion is sought is the only rational one the fact finder could have found." *See* 18 *Moore's Federal Practice 3d* § 132.03[2][d] at 132–82 (quoting *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir.1992)); *see also Dennis v. Rhode Island Hosp. Trust Nat'l Bank*, 744 F.2d 893, 899 (1st Cir.1984) ("An issue may be 'actually' decided even if it is not *explicitly* decided, for it may have constituted, logically or practically, a necessary component of the decision" reached in the prior litigation.) (emphasis in original). In other words, because Carroll would have prevailed in the adversary proceeding if the Notes and Red Dot's obligations under the purchase agreement were valid and enforceable and, therefore, a basis for Red Dot's having received reasonably equivalent value for the $18,000 that he received, one can infer that the issue was actually determined against Carroll in that proceeding and essential to the final judgment, collaterally estopping him now from asserting a claim based on the same Notes and purchase agreement. *Id.; James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459–60 (5th Cir.1971), *cert. de-*

*nied sub nom. City Trade & Indus. Ltd. v. Allahabad Bank*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971). Indeed, the validity and enforceability of the Notes and purchase agreement were not merely one of many possible defenses to liability, they were the most obvious defenses to liability, more so, even, than Carroll's argument under section 550(b) of the Bankruptcy Code.[8]

A closer question is whether the validity and enforceability of the Notes and paragraph 7 of the purchase agreement were "actually litigated" in the fraudulent transfer adversary proceeding. It is sometimes difficult, as a practical matter, to distinguish between a case in which an issue was not litigated or adjudicated and one in which the balance of the evidence inclined so decisively on one side of the question that the adjudication was "over in a wink," such as when a party chooses to present no evidence. 18 *Moore's Federal Practice 3d* § 132.03[3][a] at 132–96. However, "As a general rule, when a question of fact is put in issue by the pleadings, is submitted to the trier of fact for its determination, and is determined, that question of fact has been 'actually litigated.'" *Id.* § 132.03[2][c] at 132–81; *see also Wilson v. Pfeiffer*, 565 F.Supp. 115, 117 (S.D.N.Y.1983); 18 Wright, Miller and Cooper *Federal Practice and Procedure* § 4419 (2d ed.2004) at 499–502 ("As to issue preclusion, it is also said that preclusion applies to any issue framed by the pleadings and not withdrawn, even though it has not been raised at trial in any way."). On the other hand, stipulated facts should not be given issue-preclusive effect, as not having been actually litigat-

---

**8.** Moreover, the Bankruptcy Court, as affirmed by the District Court, found that Red Dot received *no* consideration for the transfers to Carroll. Bankruptcy Court Decision at 5 ("[S]ince the payments were made *solely* for

the benefit of Brune, the transfers did not provide reasonably equivalent value to Red Dot.") (emphasis added); *see also In re Red Dot Scenic*, 293 B.R. at 117.

188

ed, unless the parties intended otherwise. 18 *Moore's Federal Practice 3d* § 132.03[2][h][i] at 132–84.

Here, paragraphs 13 and 18 of the Trustee's complaint in the fraudulent transfer proceeding alleged that Red Dot did not receive reasonably equivalent value in return for the $18,000 of payments, and Carroll's answer denied knowledge or information sufficient to form a belief as to those allegations and denied that the payments could be avoided under section 548(a)(1)(B) of the Bankruptcy Code. As noted above, the Bankruptcy Court Decision and the decisions on appeal in the adversary proceeding stated that Carroll did not dispute that the payments were avoidable fraudulent transfers, and the Bankruptcy Court Decision and the District Court decision went on to find that the transfers were *solely* for Carroll's benefit, with *no* consideration going to the Debtor. In the light of the foregoing, I find that Carroll's concession of avoidability under section 548(a)(1) was not in the form of a nonbinding stipulation, and that Carroll therefore should be collaterally estopped from raising the validity and enforceability of the Notes and Red Dot's obligation to him under the purchase agreement in connection with his present claim. *See, e.g., Tillman v. National City Bank of N.Y.,* 118 F.2d 631, 635 (2d Cir.1941), *cert. denied,* 314 U.S. 650, 62 S.Ct. 96, 86 L.Ed. 521 (1941); *GAF Corp. v. Eastman Kodak Co.,* 519 F.Supp. 1203, 1213 (S.D.N.Y.1981) (conceded issues form basis for collateral estoppel); *see also Abbott Bank v. Armstrong,* 44 F.3d 665, 667 (8th Cir.1995) (collateral estoppel applied, based on issue admitted in answer where defendant made no effort to raise a related issue that could have had a material bearing on outcome of first litigation).

■ **C. *Res Judicata,* or Claim Preclusion.** Even if collateral estoppel does not apply to preclude Carroll's reliance upon the Notes and the purchase agreement to support his $24,000 claim, *res judicata* requires the disallowance of the claim based on the final judgment in the fraudulent transfer adversary proceeding. Under *res judicata,* or claim preclusion, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). *"Res judicata* prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Id.* Thus, *res judicata* bars not only every matter that was offered and received to sustain or defeat the claim in the prior litigation but also, unlike collateral estoppel, bars any other admissible matter that might have been offered for that purpose, whether or not "actually litigated" or "actually decided." 18 *Moore's Federal Practice 3d,* § 131.01 at 131–11, *quoting Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876) as the "classic formulation of claim preclusion doctrine."

■ As discussed above, Red Dot's obligations under the Notes and the purchase agreement clearly could have been offered in the fraudulent transfer adversary proceeding to defeat the Trustee's claim. For purposes of the prior adversary proceeding, Red Dot's obligations under those agreements either were valid and enforceable or they were not. If they were valid and enforceable, then the $18,000 of payments would have been supported by reasonably equivalent value, equal to the amount of the obligations thereunder, and the Trustee would not have prevailed. *See* 11 U.S.C. §§ 548(a)(1)(B)(i) and 548(d)(2)(A). Instead, the Trustee obtained a final judgment against Carroll, and that judgment thus precludes Carroll's

claim against the Debtor for the unpaid amounts under the Notes and the purchase agreement. *See, e.g., Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38–9 (2d Cir. 1992), *cert. denied,* 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993); 18 *Moore's Federal Practice 3d,* § 121.20[2] at 131–43–5 (preclusive effect of prior judgment depends on whether the same transaction or connected series of transactions is at issue in later litigation).[9]

## Conclusion

For the foregoing reasons, the Trustee's claim objection is granted and Carroll's claim is disallowed; provided that if Carroll has previously satisfied the judgment, with interest, in the adversary proceeding, section 502(d) of the Bankruptcy Code shall not be one of the alternative bases for disallowance of Carroll's claim.

It is SO ORDERED.

**9.** Particularly given that Carroll did not succeed in the fraudulent transfer adversary proceeding, and in the light of the other bases for granting the Trustee's objection to Carroll's claim, the Court declines to consider whether the rarely used equitable doctrine of judicial estoppel also would bar Carroll's claim. *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.,* 840 F.Supp. 211, 219 (E.D.N.Y.1994).